IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HENRY CHAVEZ,

        Plaintiff,

vs.                                                         No. CIV 00-92 LH/LFG

ROBERT PERRY, et al.,

        Defendants.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION ON CORRECTIONS DEPARTMENT DEFENDANTS' MOTION TO DISMISS[1]

This is a *pro se, in forma pauperis* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff Henry Chavez ("Chavez") is a state inmate who complains that, in the course of a series transfers among various correctional facilities in New Mexico between October 1997 and September 1999, he was subjected to numerous threats, physical assaults, and mistreatment by other inmates and, on one occasion, by prison guards. He sues corrections officials, alleging deprivation of due process in that they failed to provide him with notice and a hearing before transferring him from protective custody into the general prison population, violation of the Eighth Amendment by deliberate indifference to his safety, and a state law claim for intentional infliction of emotional distress. He seeks an injunction and compensatory and punitive damages.

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

By order dated April 13, 2000, Judge Bruce D. Black dismissed certain claims and parties from the case [Doc. 5].  Defendants Jeff Serna ("Serna") and Donna Martinez ("Martinez"), both employees of the New Mexico Corrections Department ("NMCD"), bring this Motion to Dismiss Counts I and III of Chavez's complaint [Doc. 19] (Count II is the subject of a separate motion by these Defendants for summary judgment).  For reasons given below, the motion will be granted.

### Allegations Against the NMCD Defendants

In his complaint, Chavez describes Defendant Serna as the Classification Bureau Chief for NMCD, and Defendant Martinez as NMCD's Deputy Classification Bureau Chief.  ¶¶ 4-5.  For his claim against these Defendants, he alleges as follows.

A. <u>Factual Allegations</u>

In July, 1996, Serna approved a transfer for Chavez from Southern New Mexico Correctional Facility ("Southern") to Western New Mexico Correctional Facility ("Western"), the long-term protective custody facility, because he had "enemies throughout the system."  Complaint, ¶¶ 14-16. The transfer took place in October 1997.  In February 1998, Chavez was assaulted by another inmate at Western and was placed on involuntary administrative segregation status.  A recommendation was made that Chavez be transferred back to Southern, as that facility was being reconstructed to house protective custody inmates from throughout the state.   Complaint, ¶¶ 16-17.

Serna initially approved the transfer back to Southern but later changed the paperwork so that Chavez would be transferred instead to the Torrance County Detention Facility ("TCDF"), a privately-run prison which, as Chavez describes it, houses extremely violent inmates and does not have adequate facilities or staff to provide for long term protective custody inmates.  Complaint, ¶¶ 18-20.  At TCDF, Chavez was the target of threats, abuse, and two physical assaults.  Complaint, ¶¶

2

23-34.

Chavez alleges further that he never waived his right to protective custody status and was entitled to notice and a hearing before being forced back into the general inmate population at any facility. He says that both Serna and Martinez knew that TCDF does not house protective custody inmates and that Chavez would not be provided adequate protective custody at TCDF and would thereby be placed in harm's way. Complaint, ¶¶ 21, 36.

On March 30, 1998, approximately one month after his transfer to TCDF, Chavez wrote a letter to Serna, advising Serna that he had enemies at TCDF and requesting that he be transferred back to protective custody at Southern. The letter was answered by Defendant Martinez, who told Chavez that the Classification Bureau had no notice that Chavez's transfer request was pending. Complaint, ¶¶ 19, 35-36. Chavez wrote again to Serna on April 11, 1998, giving further reasons for his request. Martinez again responded, this time informing Chavez that the Classification Bureau had approved the transfer to Southern. Complaint, ¶¶ 37-38.

In spite of this statement by Martinez, Chavez remained at TCDF until August 1, 1998, when he was transferred to the Lea County Correctional Facility ("LCCF"), another privately run prison which, Chavez alleges, also did not have the facilities to house protective custody inmates. Chavez asserts that Serna and Martinez changed his paperwork so that he was sent to LCCF rather than to long term protective custody at Southern, as he had requested and as Martinez told him would occur. Complaint, ¶¶ 39-41.

Chavez states that, as with the earlier transfer, he did not waive his right to protective custody and was entitled to reasonable notice and hearing before being forced back into the general inmate population, and that Serna and Martinez were deliberately indifferent to his safety when they

transferred him to LCCF, knowing that it was not equipped to handle protective custody inmates. Complaint, ¶¶ 42- 43. Chavez alleges that, at LCCF, he was subjected to threats and assaults by guards and other inmates, which corrections officers did nothing to prevent. Complaint, ¶¶ 44-54. He states further that, in August or September 1998, Serna and Martinez toured LCCF, on which occasion Chavez spoke directly to Martinez about the conditions under which protective custody inmates were housed; she responded that she was aware of the situation. Complaint, ¶ 55.

Chavez wrote to Serna again on August 14, 1998 and again requested a transfer to long term protective custody at Southern. Martinez wrote back, stating that the Classification Bureau had not been notified by LCCF administration that Chavez's transfer request was pending review. Chavez characterizes this response as deliberate indifference on the part of both Serna and Martinez. Complaint, ¶¶ 57-58. However, on September 14, 1998, Chavez was in fact transferred to Southern. Complaint, ¶ 59.

On September 23, 1998, Chavez was stabbed in the arm at Southern by gang members who said they recognized him as a protective custody inmate from LCCF and he "needed to die." Complaint, ¶ 63. In February 1999, Serna approved a recommendation from the administration at Southern that Chavez be transferred again to Western. However, Chavez was sent instead to The Central New Mexico Correctional Facility ("Central"), where he was again assaulted by gang members who claimed they knew Chavez had been a protective custody inmate at LCCF. Complaint, ¶¶ 65-68. On May 27, 1999, Serna approved Chavez's transfer back to long term protective custody at Southern, where he felt he would be protected. Complaint, ¶¶ 73-75.

However, in September 1999, Serna approved Chavez's transfer back to LCCF, a transfer made without notice or a hearing. Chavez alleges further that, at LCCF, all protective custody

inmates are placed together in a housing unit, without consideration for their individual classification status or needs. This system fails to separate violent inmates from those in need of protection. Complaint, ¶¶ 76-81. In addition, LCCF is understaffed and poorly trained. Complaint, ¶ 83.

On September 13, 1999, Chavez was assaulted on the transport bus on the way to LCCF. As soon as he was placed in a housing unit at LCCF, other inmates in his pod started yelling that he was a protective custody inmate and began a campaign of threats and violent behavior toward Chavez, including throwing urine on him in the shower, lighting fires in front of his cell door, and flooding his cell with dirty toilet water. Complaint, ¶¶ 84-86, 90, 93-94. On September 19, 1999, Chavez wrote again to Serna, reporting the conditions he encountered at LCCF and requesting a transfer back to Southern. Martinez responded by letter, telling Chavez that the Classification Bureau was award of Chavez's complaints and his desire to be transferred back to Southern; however, she informed him that he would continue to be housed at LCCF and she told the associate warden there to make sure that Chavez was housed with inmates of the same class status. This instruction was ignored, Chavez says. Complaint, ¶¶ 88-90.

B. Legal Claims

Chavez asserts in Count I of his complaint that he was denied due process in that Serna and Martinez failed to provide him with reasonable notice and a committee hearing before forcing him out of protective custody and back into general inmate populations at any correctional facility. Complaint, ¶¶ 103. In Count II, Chavez alleges that Serna's and Martinez's actions in transferring him to TCDF and LCCF, knowing that these facilities had a history of violent assaults and inadequate facilities and staff to house protective custody inmates, and knowing that Chavez had "documented enemies" at these facilities, constituted deliberate indifference to his safety in violation of the Eighth

Amendment. Complaint, ¶¶ 106, 111. In Count III, he alleges that Serna's and Martinez's actions constituted intentional infliction of emotional distress. Complaint, ¶¶ 113-115.

As noted above, Count II is the subject of a separate motion for summary judgment by Defendants Serna and Martinez. Plaintiff concedes that Count III should be dismissed as against all NMCD Defendants. S*ee*, Plaintiff's Response to the NMCD Defendants' Motion to Dismiss [Doc. 36], at 1. Therefore, the Court will not address the arguments directed toward the cause of action for intentional infliction of emotional distress, and that claim will be dismissed. What remains is Defendant's argument that Chavez failed to state a claim in Count I of his complaint for deprivation of his due process rights in transferring him out of protective custody and into general inmate populations, at various times and in various institutions, without prior notice and a hearing.

### Discussion

A. Standards for Motion to Dismiss

A constitutional claim under § 1983 brought by a prisoner *pro se* should not be dismissed under Fed. R. Civ. P. 12(b)(6) unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988). The allegations of the complaint must be accepted at face value, for purposes of the motion. Id., at 1526. Although the *pro se* complaint must be liberally construed under this standard, Northington v. Jackson, 973 F.2d 1518, 1520-21 (10th Cir. 1992), it will nevertheless be dismissed under Rule12(b)(6) if it fails to state a legally cognizable claim. *See*, Denton v. Hernandez, 504 U.S. 25, 32, 112 S. Ct. 1728, 1733 (1992).

B. The Due Process Claim

Chavez asserts in his Reply brief that he does not challenge the constitutionality of

Defendants' action in transferring him from one institution to another and, indeed, it is well settled that a mere transfer between institutions does not implicate the due process clause, even if the transfer results in a detrimental change in living conditions. Meachum v. Fano, 427 U.S. 215, 225, 96 S. Ct. 2532, 2538 (1976); Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000) ("there is no federal constitutional right to incarceration in any particular prison or portion of a prison"). Rather, Chavez argues that an inmate who has once been classified as a "protective custody" inmate (otherwise known as "voluntary administrative segregation" inmate) has a liberty interest in maintaining that custody, an interest created by Corrections Department policies and procedures which provide that, when an inmate's classification is up for review, he shall be given written notice and an opportunity to present his case.

This liberty interest, Chavez argues, is protected by the Due Process Clause and is violated when an inmate is transferred from protective custody into the general prison population without notice and an opportunity to be heard. Defendants counter that an inmate has no constitutional right to be placed in any particular classification level, and that prison regulations governing reclassification procedures do not give the inmate a liberty interest in his protective custody status. The Court agrees with Defendants that no liberty interest is created under the circumstances of this case, and further that Chavez's endangerment claim must be analyzed under the Eighth Amendment rather than the Fourteenth.

In general, a prisoner has no inherent constitutional right to enjoy a particular security classification. Moody v. Daggett, 429 U.S. 78, 97 S. Ct. 274 (1976); Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994). However, a liberty interest may arise if the change in classification restricts the inmate's freedom in such a way as to "impos[e] atypical and significant hardships on the

7

inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995). The Court finds, under the circumstances of this case, that the change in Chavez's classification does not give rise to a due process claim.

> Plaintiff's dissatisfaction with her security classification does not cause that status to constitute an atypical and significant hardship. There is no constitutional right to a particular security classification . . . Rather, the Sandin standard invokes a comparison of the punitive restraint with what an inmate can expect from prison life generally to determine whether there has resulted an "atypical, significant deprivation" . . . which presents "dramatic departures from the basic conditions and ordinary incidents of prison sentences" . . . As plaintiff has not alleged any atypical and significant hardship, she has failed to allege the deprivation of a federally recognized liberty interest, and is not entitled to any of the procedural protections enunciated in Wolff or its progeny. She has no due process claim.

Miller v. Campbell, *supra*, at 965.

The regulations which Chavez includes in his briefing do provide that an inmate shall be given written notice and an opportunity to be heard when his placement in administrative segregation (protective custody) is scheduled for review. S*ee* Exhibit A to Plaintiff's Response, at 6. However, the mere creation of procedural guidelines does not create a liberty interest under the constitution so as to support a cause of action under § 1983 for failure to provide these procedural protections. Hewitt v. Helms, 459 U.S. 460, 471, 103 S. Ct. 864, 871 (1983) (implicitly overruled on other grounds by Sandin v. Conner, *supra*); Levin v. Childers, 101 F.3d 44, 46 (6th Cir.1996) ("there is a 'fundamental logical flaw in viewing the process as a substantive end in itself'"); Miller v. Campbell, 108 F.Supp.2d 960, 966 (W.D. Tenn. 2000) ("Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation").

In addition, the Court takes note of the fact that most of the cases on liberty interests in prison

classification involve inmates who challenge their placement into involuntary protective custody, "administrative segregation," or some other classification which places heightened constraints on their liberty, rather than inmates who challenge their release from voluntary protective custody into the less restrictive general inmate population.[2]   Thus, the consideration found dispositive in Sandin v. Conner, *i.e.*, freedom from restraints which might impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," generally does not apply when the inmate is being released from protective custody into the less restrictive general population.

Finding no protected liberty interest, the Court will follow the general rule that federal courts do not sit to supervise the daily operation of state prisons, and will intervene only to correct a constitutional violation. Bell v. Wolfish, 441 U.S. 520, 562, 99 S. Ct. 1861, 1886 (1979).  Although, under the facts of this case, Chavez does not have a liberty interest in remaining in protective custody and thus does not have a due process claim under the Fourteenth Amendment, he does have an interest in being protected from the violence of other inmates.  This endangerment claim is best analyzed under the Eighth Amendment's prohibition on cruel and unusual punishment; the Court will address the Eighth Amendment claim in its ruling on the motion for summary judgment filed by Serna and Martinez and currently pending before the Court.

---

[2]*See, e.g.,* Templeman v. Gunter, *supra*; Perkins v. Kansas Dept. of Corrections, 165 F.3d 803 (10th Cir. 1999); Clemmons v. Thomas, 86 F.3d 1166 (Table, text in Westlaw), Nos. 94-3172, 94-3173, 1996 WL 282304 (10th Cir. May 29, 1996); Lepiscopo v. Tansy, *supra*; Traylor v. Cypert, 172 F.3d 879 (Table, text in Westlaw), No. 98-6174, 1999 WL 72205 (10th Cir. Feb. 16, 1999), cert. denied, 527 U.S. 1042 (1999); Beard v. Livesay, 798 F.2d 874 (6th Cir. 1986); Wright v. Enomoto, 462 F. Supp. 397 (N.D. Cal. 1976), *aff'd*, 434 U.S. 1052, 98 S. Ct. 1223 (1978); Devaney v. Hall, 509 F. Supp. 497 (D. Mass. 1981); Flowers v. Coughlin, 551 F. Supp. 911 (N.D.N.Y. 1982); Banks v. Fauver, 801 F. Supp. 1422 (D.N.J. 1992).

**Recommended Disposition**

That the Motion to Dismiss [Doc. 19] Defendants Serna and Martinez be granted and that Count I (deprivation of due process), and Count III (intentional infliction of emotional distress), as they apply to these two Defendants, be dismissed with prejudice.

                                                                                        */s/ Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge