IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HENRY CHAVEZ,

        Plaintiff,

vs.                                     No. CIV 00-92 LH/LFG

ROBERT PERRY, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
**DIRECTING SUBMISSION OF MARTINEZ REPORT IN CONNECTION WITH**
**CCA DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT,**
**AND DENYING COLLATERAL MOTIONS RELATED THERETO**

THIS MATTER comes before the Court on the Second Motion for Summary Judgment of Defendants Donald Dorsey, Bill Pennycuff, and Ramiro E. Rodriguez [Doc. 127], filed herein on July 11, 2002. Plaintiff Henry Chavez ("Chavez") filed a response [Doc. 138], and Defendants[1] filed a reply [Doc. 143] on September 16, 2002. This motion is now fully briefed.[2]

The basis for the second motion for summary judgment is Defendants' argument that Chavez failed to exhaust his administrative remedies, which under the Prison Litigation Reform Act

---

[1] Defendants Dorsey, Pennycuff, and Rodriguez will hereinafter be referred to as the "CCA Defendants," in keeping with the nomenclature adopted by the parties, taken from the fact that the Corrections Corporation of America ("CCA") operates the Torrance County Detention Facility ("TCDF"), where the incidents giving rise to Chavez's allegations against the defendants took place.

[2] Although there has been extensive and immaterial debate between the parties as to the correct nomenclature of the various filings in support of and opposition to the second motion for summary judgment, the Court considers the original Motion to be Doc. 127, Plaintiff's Response to be Doc. 138, and Defendants' Reply to be Doc. 143.

("PLRA") compels dismissal. Chavez claims that he did exhaust his remedies by pursuing prison grievance procedures and, furthermore, that the grievance procedures were inadequate.

The Court in this Order disposes of a number of collateral motions which have arisen in the course of briefing this second motion for summary judgment and which do not go to the merits of the primary motion. In addition, the Court finds that the failure to exhaust issue requires more factual development and therefore orders that the CCA Defendants submit a Martinez Report limited to the exhaustion issue only, as detailed below.

I.
Resolution of Collateral Motions

Prior to addressing the motion for summary judgment, the Court finds it necessary to resolve a number of sub-motions on collateral matters, which have resulted from the parties' contentious method of briefing this motion. The Court finds this method unhelpful in resolving the primary dispute, and it filed an Order on this date, notifying the parties that no filings other than a motion, response and reply would be accepted in connection with future motions.

A. Plaintiff's Motion for a Stay

Rather than file a response to the CCA Defendants' second motion for summary judgment, Chavez filed a pleading styled "Motion by Plaintiff Pursuant to Fed. R. Civ. P. 56(f) to Stay or Deny CCA Defendants Second Motion for Summary Judgment" [Doc. 129], in which Chavez argues that he cannot respond to the summary judgment motion, because he has been deprived of his legal materials including his grievance file.

This motion for a stay prompted a response by the CCA Defendants [Doc. 131], labeled a "Reply in Support of Second Motion for Summary Judgment," and Chavez filed a reply [Doc. 134]

to Defendants' filing. In his reply, Chavez states:

> In any event, Plaintiff is now prepared to respond to CCA Defendants Second motion for summary judgment. After the filing of numerous grievances and waiting nearly 14 months, on July 25, 2002, the legal assistant finally returned the majority of Plaintiff's legal materials but refused to return Plaintiff's legal books and case law . . . the legal assistant later claimed that he could not locate, among other things, Plaintiff's TCDF grievance file which contain[s] copies of every grievance Plaintiff filed at TCDF as well as notes Plaintiff took regarding problems with the CCA Defendants' grievance program . . . . Even without access to his legal books, case law, grievance records, or writing paper, Plaintiff is still prepared to respond to CCA Defendants Second Motion for Summary Judgment. Plaintiff can address the missing grievances in his Declaration in opposition to Defendants summary judgment motion . . .

[Doc. 134, at 2].

Chavez's statement that he will go ahead and respond to the motion for summary judgment renders moot his motion for a stay, and the Court will therefore deny the motion.

 B. <u>Defendants' Motion to Strike Plaintiff's Reply</u>

As noted above, the CCA Defendants filed a response to Chavez's motion for a stay, and they also found it necessary to file a separate document [Doc. 135], titled "CCA Defendants' Motion and Memorandum to Strike Plaintiff's Reply [sic] in Support of Motion [sic] Pursuant to Fed. R. Civ. P. 56(f) to Stay or Deny CCA Defendants [sic] Second Motion for Summary Judgment" [Doc. 135]. Chavez filed a response to this motion [Doc. 139].

As noted above, the motion for a stay is moot, and this motion to strike a filing connected with the motion for a stay is not well founded. It will be denied.

 C. <u>Plaintiff's Motion to Strike Defendants' Reply</u>

As discussed above, the CCA Defendants' second motion for summary judgment is now fully

3

briefed. After Defendants filed their Reply, Chavez filed "Plaintiff's Motion and Memorandum to Strike CCA Defendants' Second Reply in Support of the Second Motion for Summary Judgment" [Doc. 147]. Chavez argues that Defendants' Reply [Doc. 143] is actually a second attempt to have the last word on the motion for summary judgment, and that they should be limited to their "first reply" [i.e., Doc. 131], Defendants' response to Chavez's motion for a stay. In addition, Chavez again raises arguments previously put forth by both parties regarding proper labeling of various pleadings as "reply," "response," etc.

This dispute is immaterial to the merits of the summary judgment motion. Whatever the parties may choose to call Doc. 143, the Court denies Chavez's request to strike it.

D. Plaintiff's Motion to Strike Affidavit of Warden Lane Blair

In their memorandum [Doc. 128] in support of their second motion for summary judgment, the CCA Defendants attach an affidavit by Lane Blair, currently serving as Warden at TCDF. In the affidavit, Blair stated that Chavez participated in an orientation session at the time he entered TCDF, and that he was given a copy of an inmate handbook containing an explanation of grievance procedures. Attached to the affidavit is a copy the TCDF Inmate/Resident Grievance Procedures in effect in 1998 at the time of Chavez's incarceration at TCDF.

Chavez filed a motion [Doc. 142] to strike this affidavit, arguing that Blair did not have firsthand knowledge of the matters asserted and therefore could not testify as to the administrative procedures and remedies available to Chavez in 1998; as to whether Chavez ever filed or exhausted any grievances; or as to whether Chavez attended an orientation session and received a handbook in 1998.

In their response [Doc. 145], the CCA Defendants state that Chavez's motion to strike the

affidavit of Blair is moot, since they "expressly stated in the Reply to Second Response [*i.e.*, Doc. 143] that the affidavit of Warden Blair is immaterial and need not be considered by the Court for purposes of the [second summary judgment] Motion." Although the statement (in Doc. 143) to which the CCA Defendants refer is not a clear withdrawal of the affidavit, the Court accepts their characterization of the issue as moot (in Doc. 145), and on that basis will deny Chavez's motion and will disregard the affidavit.

The Court now turns to the second motion for summary judgment.

## II.
### CCA Defendants' Second Motion for Summary Judgment

The Court finds that a Martinez Report is necessary on the issue of exhaustion of remedies, in order that the Magistrate Judge can complete his recommended disposition on the CCA Defendants' second motion for summary judgment.

### A. The Parties' Contentions

The CCA Defendants contend that TCDF had in place, at the time of Chavez's incarceration, an inmate grievance procedure which Chavez failed to follow. They argue, therefore, that Chavez did not exhaust his administrative remedies with regard to his claims that these Defendants failed to protect him from two separate assaults in the TCDF law library, and from harassment and threats by other prisoners resulting from Defendants' "showcasing" him as a protective custody inmate.[3] Chavez contends that he did indeed exhaust his administrative remedies but cannot, for reasons beyond his control, provide documentation of all of his grievances.

---

[3] Defendants also argue that Count III of Plaintiff's complaint, which alleges a claim of intentional infliction of emotional distress against all of the Defendants, should be dismissed for failure to exhaust. This claim was dismissed as against these Defendants on January 23, 2002 [Doc. 58], and this request is therefore moot.

5

The exact content of the grievance policy is disputed; however, Chavez acknowledges that he received a copy of the TCDF grievance procedures [Doc. 138, at 2-3; Ex. A to Doc. 138, at ¶4], and he attaches a copy of these procedures [Ex. A, Attachment 2] to his Response. Defendants do not dispute the accuracy of this exhibit. The Court will therefore consider that it embodies the grievance procedures in place at TCDF at the time in question.[4] It is immaterial whether or not Chavez attended an orientation class and whether it was prison authorities, or another inmate, who gave him a copy of the grievance procedures. He concedes that he has a copy of the procedures, that he is and was familiar with the grievance process, and that he used the process aggressively.

The parties do have a disagreement, however, on the issue of whether Chavez did in fact submit grievances, and follow through on the grievance procedure, in connection with Chavez's allegations that: (1) he was assaulted in the law library on June 20, 1998; (2) he was assaulted again in the law library on July 25, 1998; and (3) he was subjected to harassment and threats from other inmates because the CCA Defendants showcased him as a protective custody inmate and placed him in a housing unit that did not provide adequate safety.

Chavez alleges that he submitted grievances to prison authorities with respect to all three of these complaints. He attached to his Response [Doc. 138, Ex. A, Att. 9] a copy of the grievance submitted with regard to the alleged June 20, 1998 incident. The form is dated June 27, 1998. In this grievance, Chavez complained that he informed Defendant Rodriguez on June 24, 1998 that he had been assaulted by general population inmates in the law library and that when Rodriguez asked

---

[4] Defendants attached to the memorandum in support of their motion the affidavit of Lane Blair, to which was attached a copy of CCA Corporate and Facility Policy on grievances [Doc. 128, Ex. 1 and Attachment A thereto]. Defendants have since stated [Doc. 145, at 2] that the Blair affidavit is "immaterial and need not be considered by the Court for purposes of the Motion" for summary judgment; therefore, the Court will not consider the affidavit or its attachments.

Chavez for the names of the assailants, and Chavez responded that he didn't know their names, Rodriguez said that he didn't believe Chavez. Chavez asserts that this grievance went unanswered.

Chavez also alleges that he filed grievances with regard to the other two incidents, but that he does not have copies of these grievances. One, he says, was filed on July 26, 1998 and dealt with the law library assault which he alleges occurred on July 25, 1998. He claims that this grievance went unanswered. The other, he says, was filed on June 19, 1998 and dealt with "the conditions under which he was forced to live at TCDF." He claims this grievance also went unanswered.

Chavez further asserts that he appealed all three of these grievances by sending a letter dated September 5, 1998, addressed to the Grievance Officer at TCDF, advising the officer that he was transferred to a different facility and had a different address. In this letter, he also asked that he be apprised of the status of these three grievances and notified the officer that he was appealing the grievances to the next level, stating "See enclosed appeal for grievances dated June 19, 1998; June 27, 1998; and July 26, 1998." [Doc. 138, Ex. A, Att. 8]. No "enclosed appeal" appears on the record. Chavez asserts that this appeal also went unanswered.

Chavez points to language in the Grievance Policy which requires the facility to maintain a "Grievance Status Log" showing the grievant's name and number, the grievance number, date of initial submission, description of the grievance and disposition of the grievance at each level. The policy does indeed require that the facility maintain such a log. [Doc. 138, Ex. A, Att. 2, at 10]. The policy also requires that copies of each completed grievance will be maintained for a minimum of three years following final disposition of the grievance.

The CCA Defendants argued in their opening memorandum that Chavez has not proved that he submitted a grievance in connection with the June 20, 1998 incident. They acknowledge that he

7

submitted (in an attachment to an earlier motion) a document which they characterize as "a copy of a grievance he claims to have prepared in connection with the alleged June 20, 1998 assault in the law library . . . [However,] Plaintiff has not and cannot present evidence that he actually filed the grievance with TCDF officers . . . and [f]urther, Plaintiff has not and cannot present evidence that he properly filed an appeal." [Doc. 128, at 8]. After Chavez filed his Response, Defendants noted in their Reply that it is undisputed that Chavez "prepared and signed" a grievance on June 27, 1998; however, they do not concede that Chavez ever submitted the grievance to prison authorities and they continue to assert, without addressing the question of Chavez's September 5, 1998 letter, that he failed to complete the grievance appeal process.     Chavez did not supply copies of the June 19 or July 26, 1998 grievances. He said in his Response that when his legal files were returned to him on July 25, 2002, "several legal files were missing including grievance files and other important legal documents" (Declaration of Henry Chavez, Doc. 138, Ex. A, at ¶3), and that as a consequence, he was unable to attach a copy of the June 18, 1998 and July 26, 1998 grievances. (*See also*, Doc. 134, at 2; and exhibits thereto).

Chavez states that the July 26, 1998 grievance addressed the assault in the law library that allegedly occurred on July 25, 1998. He describes the June 19, 1998 grievance as follows:

> this grievance addressed the assaults with urine and broken broom handles which were forcefully thrown through gaps in the unit walls, the gaps themselves, the fact that security was lax and nonexistent, that Defendants Dorsey and Pennycuff were told of the dangerous conditions, the assaults, and gaps but never did anything to fix the problem, that general population inmates were permitted on a daily basis to threaten and harass protective custody inmates, the "showcasing" of protective custody inmates and the fact that I requested to go to medical but was unable to due to lack of security.

Declaration of Henry Chavez, Dock. 138, Ex. A, at ¶9.

The CCA Defendants argue, without documentation by way of Grievance Logs or otherwise, that Chavez never filed the June 19 or July 26, 1998 grievances. They point to the fact that Chavez did not supply the Court with copies of these grievances, and they note that he has not, at any previous time in this litigation, mentioned the existence of these grievances. They also argue that his assertions are "contrary to all of Plaintiff's prior assertions in the case and should be disregarded by this Court" [Doc. 143, at 4,5]. They note that Chavez affirmatively stated in prior filings that he did not file a "formal report" of the alleged July 25 incident in the law library, because "Rodriguez did not request that he file a formal report of the incident in the library and in any event, Plaintiff provided sufficient information to Rodriguez about the assault." Although the citations to the record given by Defendants did not assist the Court in finding reference to these statements, Defendants are correct in their statement that Chavez did not, in his response [Doc. 76] to their first motion for summary judgment, make reference to any grievances filed with respect to the July 25 assault, nor with respect to the "showcasing" allegation.

In addition, Chavez stated in Doc. 76 that he told Rodriguez that he was assaulted in the law library – he did not state that he filed a grievance with respect to any such assaults – and he further stated that Rodriguez did not request that he file a "formal report." [Doc. 76, at ¶¶ 8, 9, 13]. Chavez also said in Doc. 76 that "[t]he two assaults in the law library were documented. The assault on June 20, 1998 was documented by the Control Center Officer, Officer Baca and the commander on shift that day, and the assault on July 25, 1998 was documented by Sergeants Baca, A. Jaramillo and Medical." [Id., at ¶ 11]. Chavez did not claim that the assaults were "documented" by means of a grievance, nor did he claim that Defendants' alleged failure to investigate the incidents constituted a failure to act on any alleged grievance. In addition, Chavez stated in Doc. 76 that he told

9

Defendants on several occasions that protective custody inmates were in danger in the pod and the law library, but he did not state that he informed them by means of the grievance procedure. [Id., at 3, 4, 7]. The Court agrees with Defendants that one would have expected Chavez to have made these assertions in this document, which was his response to their first motion for summary judgment, if in fact the grievances had been filed and if Defendants had ignored them.

However, the Court also finds that further factual development is necessary in order to determine the existence of a material issue of fact on the question of exhaustion.

    B.  <u>Legal Standards</u>

The general rule in cases brought under 42 U.S.C. § 1983 is that the plaintiff is not required to exhaust administrative remedies before filing suit in court. Section 1983 suits brought by prisoners alleging constitutional deprivations while incarcerated once fell within this general rule. <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S. Ct. 983 (2002).

However, Congress added an exhaustion requirement in 1980 for suits brought by state prisoners, allowing federal courts, in their discretion, to stay the prisoner's suit for up to 180 days to allow plaintiff to pursue "plain, speedy, and effective administrative remedies." 42 U.S.C. § 1997(e)(a)(1) (1994 ed.). Exhaustion would be required only if the state's prison grievance system was certified as meeting specified federal standards and if in addition the Court found that exhaustion in the particular case was "appropriate and in the interests of justice." §§ 1997e(a) and (b). Furthermore, the courts considered the exhaustion requirement inapplicable to prisoner suits for money damages when monetary relief was not available through the grievance system. <u>McCarthy v. Madigan</u>, 503 U.S. 140, 112 S. Ct. 1081 (1992).

The Prison Litigation Reform Act of 1995 (PLRA"), Pub. L. No. 104-134, changed this

10

scheme. The exhaustion provision was revised and now reads: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is now mandatory, and the remedies to be exhausted need only be "available"; there is no requirement that they meet federal standards, nor that they be "plain, speedy, and effective." Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 1824 (2001).

In addition, even an inmate who seeks only money damages, and whose applicable prison grievance system does not provide monetary relief, must first exhaust administrative remedies before he can file suit. Booth, at 734. "[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id., at 741 n.6. If all of this seems Draconian, it is apparent that Congress intended it to be.

This year, the Supreme Court refined the Booth interpretation of § 1997e, holding that the expanded exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 122 S. Ct. at 992.[5] Noting that, in the PLRA, Congress "replaced the 'general rule of non-exhaustion' with a general rule of exhaustion," the Supreme Court pointed out that the exhaustion requirement provides benefits beyond merely weeding out frivolous suits:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity
> and improve the quality of prisoner suits; to this purpose, Congress

---

[5]Chavez's lawsuit was filed prior to the decisions in Booth v. Churner and Porter v. Nussle; however, those decisions apply retroactively to this case. Harper v. Virginia Dep't. of Taxation, 509 U.S. 86, 97, 113 S. Ct. 2510, 2517 (1993); Bates v. Day, 28 Fed. Appx. 793, 795, 2001 WL 1356128, at *2 (10th Cir. Nov. 5, 2001), *citing* Talley v. Hesse, 91 F.3d 1411, 1413 (10th Cir. 1996).

scheme. The exhaustion provision was revised and now reads: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is now mandatory, and the remedies to be exhausted need only be "available"; there is no requirement that they meet federal standards, nor that they be "plain, speedy, and effective." Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 1824 (2001).

In addition, even an inmate who seeks only money damages, and whose applicable prison grievance system does not provide monetary relief, must first exhaust administrative remedies before he can file suit. Booth, at 734. "[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id., at 741 n.6. If all of this seems Draconian, it is apparent that Congress intended it to be.

This year, the Supreme Court refined the Booth interpretation of § 1997e, holding that the expanded exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 122 S. Ct. at 992.[5] Noting that, in the PLRA, Congress "replaced the 'general rule of non-exhaustion' with a general rule of exhaustion," the Supreme Court pointed out that the exhaustion requirement provides benefits beyond merely weeding out frivolous suits:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity
> and improve the quality of prisoner suits; to this purpose, Congress

---

[5]Chavez's lawsuit was filed prior to the decisions in Booth v. Churner and Porter v. Nussle; however, those decisions apply retroactively to this case. Harper v. Virginia Dep't. of Taxation, 509 U.S. 86, 97, 113 S. Ct. 2510, 2517 (1993); Bates v. Day, 28 Fed. Appx. 793, 795, 2001 WL 1356128, at *2 (10th Cir. Nov. 5, 2001), *citing* Talley v. Hesse, 91 F.3d 1411, 1413 (10th Cir. 1996).

>afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmates' grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation ... In other instances, the internal review might 'filter out some frivolous claims' ... And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter, 122 S. Ct. at 988.

The CCA Defendants move for summary judgment. They therefore have the burden of demonstrating that there is no genuine issue of material fact as to whether Chavez exhausted his administrative remedies, and that they are therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). Summary judgment is appropriate only if there is insufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). The Court, in considering a motion for summary judgment, construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Foster v. AlliedSignal, Inc., 293 F.3d 1187 (10th Cir. 2002).

Defendants argue that Chavez has the burden of establishing that he exhausted his remedies. The circuits are in disagreement on this point; *compare* Brown v. Toombs, 139 F.3d 1102, 1004 (6th Cir. 1998) (burden is on plaintiff), *with* Wyatt v. Terhune, – F.3d –, 2002 WL 31103012 (9th Cir. Sept. 23, 2002) (exhaustion is a defense to be raised and proved by defendant). The Tenth Circuit appears to place the burden on plaintiff; *see*, Dmytryszyn v. Hickox, 172 F.3d 62 (Table, text in Westlaw), No. 98-1052, 1999 WL 59622 (10th Cir. Feb. 9, 1999), *citing* Brown. Be that as it may,

it is Defendants who are asking for summary judgment, and they have the burden of demonstrating that Chavez cannot come forth with evidence to show exhaustion.

Chavez claims that he did exhaust his administrative remedies, and he presents documentary evidence of a grievance which he claims he submitted to prison authorities, complaining about the June 20, 1998 law library assault.  He also claims in his declaration that he filed a grievance on July 26, 1998 complaining about the July 25, 1998 law library assault, and another grievance regarding harassment by other inmates as a result of the "showcasing" and inadequate protection by Defendants. He does not provide documentary evidence of these latter two grievances but explains this by claiming that Defendants, and other prison officials, have prevented him from accessing his grievance file.  Chavez asserts that he not only invoked the grievance process but took it to completion by sending a letter to the grievance officer when nothing was done in response to these three grievances. He supplies documentary evidence of such a letter.

Defendants concede the existence of a grievance document with regard to the June 20 incident.  They do not explicitly claim that Chavez failed to submit this document to prison authorities; rather, they argue that he failed to prove that he submitted it.  Further, Defendants do not explicitly assert that the two undocumented grievances do not exist or were never submitted; rather, they argue that Chavez failed to prove that the grievances existed and were in fact submitted to prison authorities.  And Defendants do not admit or deny the existence of the September 5, 1998 letter; they simply do not mention it.

The question before the Court on this motion is whether Chavez fully utilized an available prison grievance process.  If he did not, his claims against these Defendants must be dismissed. Defendants must show that there is no genuine issue of material fact on this issue.  At present, the

Court has before it, on the one hand, Chavez's allegations that the process was fully utilized, along with some pieces of documentary evidence to support the allegations; on the other hand, Defendants' claim that grievances were not filed and appeals were not pursued, and their reference to inconsistent statements by Chavez on these matters.

The Court does not normally ask the parties to submit additional evidence once a summary judgment motion has been fully briefed. However, in this case, it is apparent that the CCA Defendants have, or should have, additional factual information which would assist the Court in determining the existence or lack thereof of genuine issues of fact. "[P]rison officials are likely to have . . . superior access to prison administrative records in comparison to prisoners, especially, as is often the case, when prisoners have moved from one facility to another." Wyatt, *supra*, at *7. In cases involving *pro se* prisoner complaints about conditions of confinement, the Court has an additional tool that it may use in developing the underlying factual bases of the case, and the Court finds that this is an appropriate circumstance in which to use that tool.

    C.  Martinez Report

In a case brought by a prisoner proceeding *pro se,* the Court may order Defendant to investigate the incidents which form the basis for Plaintiff's lawsuit and to submit a special report pursuant to Martinez v. Aaron, 570 F.2d 317, 320 (10th Cir. 1978).

The Tenth Circuit has authorized the Court to require a Martinez report to develop the factual or legal basis for determining whether an inmate has a meritorious claim. *See, e.g.*, Gee v. Estes, 829 F.2d 1005, 1007 (10th Cir. 1987). The report may be used in a variety of procedural situations, including a motion for summary judgment. If a Martinez report is used for summary judgment purposes, however, Plaintiff must be given an opportunity to present conflicting evidence to

controvert the facts set out in the report.

To assist the Court in evaluating whether Chavez adequately exhausted his administrative remedies, the CCA Defendants are directed to prepare a report directed solely to this issue. Defendants will address the following matters and are directed to:

1. Submit copies of all documents contained in Chavez's grievance file dealing with his incarceration at TCDF in 1998.

2. Submit a copy of the TCDF grievance log for 1998 as it relates to Chavez.

3. State, by means of affidavit, and documentation if any, the dates and grounds for each grievance filed by Chavez during his incarceration at TCDF in 1998, the action taken on each such grievance, the disposition of each such grievance, whether those dispositions were appealed by Chavez, and the disposition of any appeal of each such grievance.

4. State, by means of affidavit, whether for each such grievance an investigation was conducted and, if so, provide copies of all documentation surrounding such investigation, including a report of the investigation, if any.

5. If no investigation was conducted in response to any such grievance, state, by means of affidavit, the reasons why no investigation was conducted.

6. To the extent not already supplied, submit copies of all documentation relating to each such grievance, appeal, and investigation.

7. If any grievance referred to in Point 2 above is not documented, or the documentation is missing, explain the reasons why there is no documentation.

Defendants' <u>Martinez</u> report must address each point set out above. Documents in support of the report may be submitted simultaneously with the report, but the submission of documents

15

alone, or documents submitted with an index but without an accompanying report, will not be in compliance with this order. Defendants may submit additional affidavits in support of the report, if necessary.

The report shall be filed and served on or before November 4, 2002. Plaintiff will have fourteen days from the date of service to respond. **The parties are hereby given notice that the report will be used in deciding whether to grant summary judgment of Chavez's claims, and the parties should submit whatever materials they consider relevant to the claims.** *See*, Hall v. Bellmon, 935 F.2d 1106 (10th Cir. 1991).

## Order

IT IS THEREFORE ORDERED that the CCA Defendants will submit a Martinez Report, as described above, on or before November 4, 2002. Plaintiff will have fourteen days to file a response. No additional filings will be allowed in connection with the CCA Defendants' Second Motion for Summary Judgment.

IT IS FURTHER ORDERED that the "Motion by Plaintiff Pursuant to Fed. R. Civ. P. 56(f) to Stay or Deny CCA Defendants Second Motion for Summary Judgment" [Doc. 129] is denied as moot.

IT IS FURTHER ORDERED that "CCA Defendants' Motion and Memorandum to Strike Plaintiff's Reply [sic] in Support of Motion [sic] Pursuant to Fed. R. Civ. P. 56(f) to Stay or Deny CCA Defendants [sic] Second Motion for Summary Judgment" [Doc. 135] is denied.

IT IS FURTHER ORDERED that "Plaintiff's Motion and Memorandum to Strike CCA Defendants' Second Reply in Support of the Second Motion for Summary Judgment" [Doc. 147] is denied.

IT IS FURTHER ORDERED that "Plaintiff's Motion and Memorandum to Strike Affidavit of Warden Lane Blair" [Doc. 142] is denied as moot.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge
