IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HENRY CHAVEZ,

        Plaintiff,

vs.                                                   No. CIV 00-92 WJ/LFG

ROBERT PERRY, et al.,

        Defendants.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION ON CCA DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT[1]

THIS MATTER comes before the Court on the Second Motion for Summary Judgment of Defendants Donald Dorsey, Bill Pennycuff, and Ramiro E. Rodriguez [Doc. 127], filed herein on July 11, 2002. Plaintiff Henry Chavez ("Chavez") filed a response [Doc. 138], and Defendants[2] filed a reply [Doc. 143] on September 16, 2002.

The basis for the second motion for summary judgment is Defendants' argument that Chavez failed to exhaust his administrative remedies, which under the Prison Litigation Reform Act ("PLRA") compels dismissal. Chavez claims that he did exhaust his remedies by pursuing prison

---

[1]**Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.**

[2]Defendants Dorsey, Pennycuff, and Rodriguez will hereinafter be referred to as the "CCA Defendants," in keeping with the nomenclature adopted by the parties, taken from the fact that the Corrections Corporation of America ("CCA") operates the Torrance County Detention Facility ("TCDF"), where the incidents giving rise to Chavez's allegations against the defendants took place.

grievance procedures and, furthermore, that the grievance procedures were inadequate.

In a prior order [Doc. 153], the Court found that the failure-to-exhaust issue required more factual development, and it therefore ordered the CCA Defendants to submit a Martinez Report limited to the exhaustion issue only. That report [Doc. 158] was filed on November 4, 2002. Chavez's response [Doc. 161] was filed on November 25, 2002. No further filings are allowed with regard to the Second Motion for Summary Judgment or the Martinez Report, and this motion is now fully briefed.[3]

## Discussion

### A. Standards for Summary Judgment

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

Once the moving party meets its burden, the party opposing the motion must come forward

---

[3]Although there has been extensive and immaterial debate between the parties as to the correct nomenclature of the various filings in support of and opposition to the second motion for summary judgment, the Court considers the original Motion to be Doc. 127, Plaintiff's Response to be Doc. 138, and Defendants' Reply to be Doc. 143.

with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment. Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

"The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to create a dispute of fact that is 'genuine.'" Lawnmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). Summary judgment is appropriate only if there not sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. Anderson, 477 U.S. at 249, 106 S. Ct. at 2511. Thus, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52, 106 S. Ct. at 2512. The Court in considering a motion for summary judgment construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Foster v. Alliedsignal, Inc., 293 F.3d 1187 (10th Cir. 2002).

B. The Parties' Contentions

The CCA Defendants contend that TCDF had in place, at the time of Chavez's incarceration, an inmate grievance procedure which Chavez failed to follow. They argue, therefore, that Chavez did not exhaust his administrative remedies with regard to his claims that these Defendants failed to protect him from two separate assaults in the TCDF law library, and from harassment and threats by

other prisoners resulting from Defendants' "showcasing" him as a protective custody inmate.[4] Chavez contends that he did indeed exhaust his administrative remedies but cannot, for reasons beyond his control, provide documentation of all of his grievances.

The exact content of the grievance policy is disputed; however, Chavez acknowledges that he received a copy of the TCDF grievance procedures [Doc. 138, at 2-3; Ex. A to Doc. 138, at ¶4], and he attaches a copy of these procedures [Ex. A, Attachment 2] to his Response. Defendants do not dispute the accuracy of this exhibit. The Court will therefore consider that it embodies the grievance procedures in place at TCDF at the time in question.[5] It is immaterial whether or not Chavez attended an orientation class and whether it was prison authorities, or another inmate, who gave him a copy of the grievance procedures. He concedes that he has a copy of the procedures, that he is and was familiar with the grievance process, and that he used the process aggressively.

The parties do have a disagreement, however, on the issue of whether Chavez did in fact submit grievances and follow through on the grievance procedure, in connection with Chavez's allegations that: (1) he was assaulted in the law library on June 20, 1998; (2) he was assaulted again in the law library on July 25, 1998; and (3) he was subjected to harassment and threats from other inmates because the CCA Defendants showcased him as a protective custody inmate and placed him

---

[4]Defendants also argue that Count III of Plaintiff's complaint, which alleges a claim of intentional infliction of emotional distress against all of the Defendants, should be dismissed for failure to exhaust. This claim was dismissed as against these Defendants on January 23, 2002 [Doc. 58], and this request is therefore moot.

[5]Defendants attached to the memorandum in support of their motion the affidavit of Lane Blair, to which was attached a copy of CCA Corporate and Facility Policy on grievances [Doc. 128, Ex. 1 and Attachment A thereto]. Defendants have since stated [Doc. 145, at 2] that the Blair affidavit is "immaterial and need not be considered by the Court for purposes of the Motion" for summary judgment; therefore, the Court will not consider the affidavit or its attachments.

in a housing unit that did not provide adequate safety.

Chavez alleges that he submitted grievances to prison authorities with respect to all three of these complaints. He attached to his Response [Doc. 138, Ex. A, Att. 9] a copy of the grievance submitted with regard to the alleged June 20, 1998 incident. The form is dated June 27, 1998. In this grievance, Chavez complained that he informed Defendant Rodriguez on June 24, 1998 that he had been assaulted by general population inmates in the law library and that when Rodriguez asked Chavez for the names of the assailants, and Chavez responded that he didn't know their names, Rodriguez said that he didn't believe Chavez. Chavez asserts that this grievance went unanswered.

Chavez also alleges that he filed grievances with regard to the other two incidents, but that he does not have copies of these grievances. One, he says, was filed on July 26, 1998 and dealt with the law library assault which he alleges occurred on July 25, 1998. He claims that this grievance went unanswered. The other, he says, was filed on June 19, 1998 and dealt with "the conditions under which he was forced to live at TCDF." He claims this grievance also went unanswered.

Chavez further asserts that he appealed all three of these grievances by sending a letter dated September 5, 1998, addressed to the Grievance Officer at TCDF, advising the officer that he was transferred to a different facility and had a different address. In this letter, he also asked that he be apprised of the status of these three grievances and notified the officer that he was appealing the grievances to the next level, stating "See enclosed appeal for grievances dated June 19, 1998; June 27, 1998; and July 26, 1998." [Doc. 138, Ex. A, Att. 8]. No "enclosed appeal" appears on the record. Chavez asserts that this appeal also went unanswered.

Chavez points to language in the Grievance Policy which requires the facility to maintain a "Grievance Status Log" showing the grievant's name and number, the grievance number, date of

5

initial submission, description of the grievance and disposition of the grievance at each level. The policy does indeed require that the facility maintain such a log. [Doc. 138, Ex. A, Att. 2, at 10]. The policy also requires that copies of each completed grievance will be maintained for a minimum of three years following final disposition of the grievance.

The CCA Defendants argued in their opening memorandum that Chavez has not proved that he submitted a grievance in connection with the June 20, 1998 incident. They acknowledge that he submitted (in an attachment to an earlier motion) a document which they characterize as "a copy of a grievance he claims to have prepared in connection with the alleged June 20, 1998 assault in the law library . . . [However,] Plaintiff has not and cannot present evidence that he actually filed the grievance with TCDF officers . . . and [f]urther, Plaintiff has not and cannot present evidence that he properly filed an appeal." [Doc. 128, at 8]. After Chavez filed his Response, Defendants noted in their Reply that it is undisputed that Chavez "prepared and signed" a grievance on June 27, 1998; however, they do not concede that Chavez ever submitted the grievance to prison authorities and they continue to assert that he failed to complete the grievance appeal process.

Chavez did not supply copies of the June 19 or July 26, 1998 grievances. He said in his Response that his legal files were confiscated for a time, and when they were returned to him on July 25, 2002, "several legal files were missing including grievance files and other important legal documents." (Declaration of Henry Chavez, Doc. 138, Ex. A, at ¶3). As a consequence, he says, he was unable to attach a copy of the June 18, 1998 and July 26, 1998 grievances. (*See also*, Doc. 134, at 2; and exhibits thereto).

Chavez states that the July 26, 1998 grievance addressed the assault in the law library that allegedly occurred on July 25, 1998. He describes the June 19, 1998 grievance as follows:

6

> this grievance addressed the assaults with urine and broken broom handles which were forcefully thrown through gaps in the unit walls, the gaps themselves, the fact that security was lax and nonexistent, that Defendants Dorsey and Pennycuff were told of the dangerous conditions, the assaults, and gaps but never did anything to fix the problem, that general population inmates were permitted on a daily basis to threaten and harass protective custody inmates, the "showcasing" of protective custody inmates and the fact that I requested to go to medical but was unable to due to lack of security.

Declaration of Henry Chavez, Doc. 138, Ex. A, at ¶9.

The CCA Defendants contend that Chavez never filed the June 19 or July 26, 1998 grievances. In their original motion and memorandum in support, they did not supply documentation, by way of Grievance Logs or otherwise, to support this argument. The Court ordered that they supply the relevant Grievance Logs as part of the Martinez Report. In response, Defendants submitted the affidavit of Lane Blair, the current Warden of TCDF, who stated that he directed an exhaustive search for the 1998 grievance logs, including a search of all archived boxes in all storage areas, but the logs were not located. (Doc. 158, Ex. A at ¶ 3). Blair further stated, however, that he reviewed the TCDF confidential incident log for 1998, and there was no entry in the 1998 incident log showing that Henry Chavez was involved in an incident in 1998. He said that, if there had been an investigation of an incident in 1998, it would have been recorded in the incident log. (Id.).

Defendants point to the fact that Chavez did not supply the Court with copies of these alleged grievances, and they note that he has not, at any previous time in this litigation, mentioned the existence of these grievances. They also argue that his assertions are "contrary to all of Plaintiff's prior assertions in the case and should be disregarded by this Court" [Doc. 143, at 4,5]. They note that Chavez affirmatively stated in prior filings that he did not file a "formal report" of the alleged July 25 incident in the law library, because "Rodriguez did not request that he file a formal report of the

7

incident in the library and in any event, Plaintiff provided sufficient information to Rodriguez about the assault." Although the citations to the record given by Defendants did not assist the Court in finding reference to these statements, Defendants are correct in their statement that Chavez did not, in his response [Doc. 76] to their first motion for summary judgment, make reference to any grievances filed with respect to the July 25 assault, nor with respect to the "showcasing" allegation.

In addition, Chavez stated in Doc. 76 that he told Rodriguez that he was assaulted in the law library – he did not state that he filed a grievance with respect to any such assaults – and he further stated that Rodriguez did not request that he file a "formal report." [Doc. 76, at ¶¶ 8, 9, 13]. Chavez also said in Doc. 76 that "[t]he two assaults in the law library were documented. The assault on June 20, 1998 was documented by the Control Center Officer, Officer Baca and the commander on shift that day, and the assault on July 25, 1998 was documented by Sergeants Baca, A. Jaramillo and Medical." [Id., at ¶ 11].

Chavez did not claim that the way these assaults were "documented" was by means of a grievance, nor did he claim that Defendants' alleged failure to investigate the incidents constituted a failure to act on any alleged grievance. In addition, Chavez stated in Doc. 76 that he told Defendants on several occasions that protective custody inmates were in danger in the pod and the law library, but he did not state that he informed them by means of the grievance procedure. [Id., at 3, 4, 7]. The Court agrees with Defendants that one would have expected Chavez to have made these assertions in this document, which was his response to their first motion for summary judgment, if in fact the grievances had been filed and if Defendants had ignored them.

C. Legal Standards for Exhaustion under the PLRA

The general rule in cases brought under 42 U.S.C. § 1983 is that the plaintiff is not required

8

to exhaust administrative remedies before filing suit in court.  Section 1983 suits brought by prisoners alleging constitutional deprivations while incarcerated once fell within this general rule.  Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983 (2002).

However, Congress added an exhaustion requirement in 1980 for suits brought by state prisoners, allowing federal courts, in their discretion, to stay the prisoner's suit for up to 180 days to allow plaintiff to pursue "plain, speedy, and effective administrative remedies."  42 U.S.C. § 1997(e)(a)(1) (1994 ed.).  Exhaustion would be required only if the state's prison grievance system was certified as meeting specified federal standards and if in addition the Court found that exhaustion in the particular case was "appropriate and in the interests of justice."  §§ 1997e(a) and (b).  Furthermore, the courts considered the exhaustion requirement inapplicable to prisoner suits for money damages when monetary relief was not available through the grievance system.  McCarthy v. Madigan, 503 U.S. 140, 112 S. Ct. 1081 (1992).

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, changed this scheme.  The exhaustion provision was revised and now reads: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is now mandatory, and the remedies to be exhausted need only be "available"; there is no requirement that they meet federal standards, nor that they be "plain, speedy, and effective."  Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 1824 (2001).

In addition, even an inmate who seeks only money damages, and whose applicable prison grievance system does not provide monetary relief, must first exhaust administrative remedies before he can file suit.  Booth, at 734.  "[W]e will not read futility or other exceptions into statutory

9

exhaustion requirements where Congress has provided otherwise." Id., at 741 n.6. If all of this seems Draconian, it is apparent that Congress intended it to be.

This year, the Supreme Court refined the Booth interpretation of § 1997e, holding that the expanded exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 122 S. Ct. at 992.[6] Noting that, in the PLRA, Congress "replaced the 'general rule of non-exhaustion' with a general rule of exhaustion," the Supreme Court pointed out that the exhaustion requirement provides benefits beyond merely weeding out frivolous suits:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmates' grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation ... In other instances, the internal review might 'filter out some frivolous claims' ... And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter, 122 S. Ct. at 988.

The CCA Defendants move for summary judgment. As noted above, Defendants therefore have the burden of demonstrating that there is no genuine issue of material fact as to whether Chavez exhausted his administrative remedies, and that they are therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes.

Defendants argue that Chavez has the burden of establishing that he exhausted his remedies.

---

[6]Chavez's lawsuit was filed prior to the decisions in Booth v. Churner and Porter v. Nussle; however, those decisions apply retroactively to this case. Harper v. Virginia Dep't. of Taxation, 509 U.S. 86, 97, 113 S. Ct. 2510, 2517 (1993); Bates v. Day, 28 Fed. Appx. 793, 795, 2001 WL 1356128, at *2 (10th Cir. Nov. 5, 2001), citing Talley v. Hesse, 91 F.3d 1411, 1413 (10th Cir. 1996).

The circuits are in disagreement on this point; *compare* <u>Brown v. Toombs</u>, 139 F.3d 1102, 1004 (6th Cir. 1998) (burden is on plaintiff), *with* <u>Wyatt v. Terhune</u>, – F.3d –, 2002 WL 31103012 (9th Cir. Sept. 23, 2002) (exhaustion is a defense to be raised and proved by defendant).  The Tenth Circuit appears to place the burden on plaintiff; *see*, <u>Dmytryszyn v. Hickox</u>, 172 F.3d 62 (Table, text in Westlaw), No. 98-1052, 1999 WL 59622 (10th Cir. Feb. 9, 1999), *citing* <u>Brown</u>.  *But see*, <u>Boulden v. Tafoya</u>, 37 Fed. Appx. 974, 975 (10th Cir. 2002) (plaintiff "failed to document his exhaustion of available administrative remedies").  Be that as it may, it is Defendants who are asking for summary judgment, and they have the burden of demonstrating that Chavez cannot come forth with evidence to show exhaustion.

Chavez claims that he did exhaust his administrative remedies, and he presents documentary evidence of a grievance which he claims he submitted to prison authorities, complaining about the June 20, 1998 law library assault.  He also claims in his declaration that he filed a grievance complaining about the July 25, 1998 law library assault, and another grievance regarding harassment by other inmates as a result of the "showcasing" and inadequate protection by Defendants.  He does not provide documentary evidence of these latter two grievances but explains this by claiming that Defendants, and other prison officials, have prevented him from accessing his grievance file.  Chavez asserts that he not only invoked the grievance process but took it to completion by sending a letter to the grievance officer when nothing was done in response to these three grievances.  He supplies documentary evidence of such a letter.

Defendants concede the existence of a grievance document with regard to the June 20 incident, but they point out that there is nothing on the record to show that this grievance was ever submitted to prison authorities.  Defendants further argue that there is nothing on the record to show

that the other two grievances existed or were ever submitted to prison authorities.

In their initial submission in support of summary judgment, Defendants did not admit or deny the existence of the September 5, 1998 letter; they simply did not mention it. In the recently filed Martinez Report, Defendants supplied the affidavit of Mike Flores, the Grievance Appeals Coordinator for the New Mexico Corrections Department ("NMCD"), who states that he reviewed the archived records of the NMCD for all 1998 grievance appeals. He says that, if Chavez had filed an appeal of any grievance he submitted in 1998, the record of that appeal would be in the box of documents which he reviewed. He says further that are no documents in the box showing that Chavez submitted a grievance appeal arising out of his incarceration at TCDF in 1998. (Doc. 158, Ex. B, at ¶ 3). Flores also states that the NMCD policy in effect in 1998 required inmates to appeal their grievances to the Director of Adult Prisons, in order to fully exhaust. The TCDF policy, a copy of which was submitted by Chavez as part of his response to the Second Motion for Summary Judgment, includes a similar provision, requiring an inmate to appeal to the Secretary of Corrections or his designee. (Doc. 138, Attachment 2 to Declaration of Henry Chavez).

  D. <u>Plaintiff Failed to Exhaust Administrative Remedies</u>

The question before the Court is whether Chavez fully utilized an available prison grievance process. If he did not, his claims against these Defendants must be dismissed. 42 U.S.C. § 1997e(a). On this motion for summary judgment, Defendants must show that there is no genuine issue of material fact on this issue. The Court finds that Defendants have met their burden, and the claims against them should be dismissed.

In the Martinez Report ordered by the Court, the CCA Defendants did not provide the grievance log requested by the Court, stating by way of affidavit that the log could not be found.

However, as noted above, current TCDF warden Lane Blair testified in his affidavit that he made a thorough search for the log, and that he also reviewed the confidential incident log for 1998 and found no evidence of any investigation into the three incidents, *i.e.,* the two alleged assaults in the law library on June 20, 1998 and July 25, 1998, and Chavez's general claim that he was subjected to harassment and threats from other inmates due to Defendant's showcasing him as a protective custody inmate.

While there is evidence that Chavez reported the June 20, 1998 incident to Defendant Rodriguez, and may even have filed a grievance with regard to that incident, the record is devoid of documentation of any grievance with regard to the other incidents. As Defendants point out, the fact that Chavez was seen in the medical clinic as the result of an assault does not establish that he submitted proper grievances. In addition, there is no record of a proper appeal of any of these three grievances. Chavez did submit a copy of a letter which he says he sent to the grievance officer at TCDF on September 5, 1998, stating that an appeal of three grievances was enclosed. However, there is no copy of any document or documents which he claims to have enclosed, and there is no record at NMCD of any appeal to the Secretary, his designee, or the Director of Adult Prisons, as required in TCDF and NMCD policies.

The PLRA requires that an inmate fully exhaust the available formal grievance procedure. Boulden, at 975. This means that an inmate must "*properly* complete" [emphasis by the court] the grievance process before he may bring his claim in court:

> An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies …. Nor is his argument that he gave notice of his claims to various Defendants by means other than the grievance process persuasive – the doctrine of substantial

13

>   compliance does not apply.

Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

Without determining where the burden of proof lies on this issue, the Court finds that the CCA Defendants have met the standards for summary judgment, in that they have demonstrated the absence of a genuine issue of material fact as to Chavez's completion of the administrative exhaustion process. Judgment in favor of the CCA Defendants is therefore appropriate.

### E.  Dismissal of Entire Complaint for Failure to Exhaust Some, But Not All, Claims

Dismissal of Chavez's claims against the CCA Defendants raises the issue whether his entire complaint should be dismissed, even though the other defendants in this case have not raised the exhaustion issue nor otherwise moved for dismissal or summary judgment.

The statute at issue, 42 U.S.C. § 1997e(a), provides:

>   No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This language – "no action shall be brought" – has prompted several courts to require "total exhaustion," that is, they will dismiss a prisoner's entire lawsuit if any claim remains unexhausted, even if the complaint includes claims which have been fully exhausted. This view is not universal, however, and the courts are divided on this issue. *See*, Nelson v. Rodas, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *5 (S.D.N.Y. Sept. 17, 2002), setting forth the cases pro and con.

The Tenth Circuit has not specifically ruled on this issue. However, in Lee v. Suthers, No. 02-1201, 2002 WL 31492632 (10th Cir. Nov. 8, 2002), the circuit court affirmed the district court's dismissal of one claim against the medical supervisor of a corrections center for failure to exhaust,

while dismissing on separate grounds other claims against that defendant and against other defendants. While this holding implies that "total exhaustion" is not required by the Tenth Circuit, it does not establish a hard and fast rule. Nevertheless, in the absence of more definitive authority from the Tenth Circuit, this Court declines to dismiss the entire complaint because Chavez failed to exhaust his claims against one set of defendants, particularly given that the other set of defendants has not requested such relief.

## Recommended Disposition

That the CCA Defendants' Second Motion for Summary Judgment [Doc. 127] be granted and the claims against those Defendants be dismissed without prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge